### HARTER *ET AL.* v. JOHNSTON *ET AL.*

#### (119 S. E., 169)

1. ATTORNEY AND CLIENT—EXECUTORS NOT BOUND BY CONSENT OF THEIR ATTORNEYS TO ORDER OF REFERENCE TO DETERMINE ATTORNEYS' COMPENSATION.—In an action involving the question whether a will created a trust, a Judge, holding Court in a circuit other than the one in which the cause was pending, has no jurisdiction, in the absence of executors' consent, to order a reference to determine the compensation due executors' attorneys for services rendered in that action, executors not being bound by the consent of their attorneys.

2. TRUSTS—TRUSTEE'S DUTY TO SEE THAT AMOUNT OF ATTORNEYS' COMPENSATION IS NOT EXCESSIVE.—Where a trust is attacked by third parties, it is the trustee's duty to see that the amount of compensation paid to attorneys is not excessive.

Before N. G. EVANS, SPECIAL JUDGE, and SEASE, J., Allendale, December, 1922. Reversed.

Action by Mamie M. Harter *et al* against J. E. Johnston *et al.,* as executors, and others. From an order fixing fees to be paid to H. L. O'Bannon and C. C. Simms, attorneys for executors, and from an order refusing to set aside said order the executors appeal.

See also 120 S. C., —; 115 S. E., 217.

The statement of facts set out in the case was as follows:

"This is an appeal from an order and judgment fixing the fees of counsel for executors of the will of Dr. W. J. Young, deceased, in a contest of the will by certain heirs at law, and also an appeal from an order of Circuit Judge T. S. Sease refusing to set aside the above mentioned order.

"Dr. W. J. Young, of Allendale County, died in Allendale County, leaving an estate in the same County, which

was disposed of by his last will and testament. The appellants, J. F. Lightsey, J. E. Johnston, and E. L. Young were named in the will as executors, and all three qualified and actively performed their duties. The will was probated in Allendale County in the Fourteenth Judicial Circuit. Certain heirs at law brought action against the executors in the Court of Common Pleas of Allendale County, asking that, as to one bequest providing for the establishment of a hospital at Fairfax, S. C., the will be declared "no will," and that the portion of the estate proposed to be devoted to this charitable purpose be distributed among the heirs at law in accordance with the Statutes of Distribution. The total estate was valued at $144,693.25. Bequests in the will, unattacked, amount to $14,000.00; debts, burial expenses, etc., amounted to $1,439.94, leaving the sum in controversy, $129,253.31. The controversy also involved to what extent, if any, the Fairfax Library Association mentioned in the will was obligated to the establishment of a home for nurses.

"The action brought by the heirs at law was entitled Mamie M. Harter *et al.* v. Lightsey *et al.,* Executors, and will be reported in 120 S. C., at page —— (see 115 S. E., 217).

"When this action was brought the executors retained Mr. H. L. O'Bannon as counsel to defend them in the same, and, upon his statement that the fee would not be thereby increased, assented to the association of Mr. C. C. Simms as additional counsel for the defendants-executors. No amount was agreed upon as a fee, the executors being advised that they were without power to fix the fees, but that was reserved to the Court and that whatever was fixed by the Court for Mr. O'Bannon would be shared by him with Mr. Simms.

"The actual hearings in the case consisted of one hearing before Special Referee J. E. McDonald on an agreed statement of facts at Barnwell, S. C., the home of Messrs.

O'Bannon and Simms; one hearing by agreement of counsel before Judge Memminger at Charleston, S. C.; and one hearing in the Supreme Court, which hearing necessitated two trips to the Supreme Court. The above-named counsel also advised the executors as to the Federal laws governing the nonliability of the estate to pay an inheritance tax. Mr. O'Bannon had repeated conferences with the executors, making visits to Fairfax for that purpose, and receiving visits in his office by the executors and considerable work was required after the pleadings were filed to bring in necessary parties, as well as the preparation of the case, and the agreed statement of facts was only arrived at after considerable conferences and effort to save the expense of witnesses, and after incurring expense by Mr. O'Bannon, and closing up his office repeatedly in his visits to Fairfax, together with costs and expenses to Columbia and to Charleston paid by the said attorneys.

"The will was sustained both by the Circuit Court and the Supreme Court, the contentions of the heirs at law attacking the will were refused in toto and, after the remittitur was sent down from the Supreme Court, counsel for all parties agreed to an order referring the matter to J. O. Patterson, Esq., of Barnwell, S. C., as Special Referee, to hold a reference for the purpose of arriving at a fee for Messrs. O'Bannon and Simms, in consideration of their legal advice and conduct of the case on behalf of the executors. This order was signed by Special Judge N. G. Evans, presiding at Barnwell in the Second Judicial Circuit. The order was not consented to by the executors. They were given notice of the reference, but did not attend. The other parties to the cause no longer had any rights in the estate. Special Referee Patterson, after taking testimony, filed a report recommending for Messrs. O'Bannon and Simms a fee of $20,000.00 to be paid out of the assets of the estate. A letter advising the executors of the Referee's report recommending the fee was mailed to the executors prior to the

hearing of the said report by Judge Evans, but the executors contend that they did not receive this letter, and did not know of the findings of the Referee until after Judge Evans confirmed the same by his order of December 28, 1922.

"The following is the order under which the above-mentioned reference was held:

### ORDER

"By consent of counsel it is ordered:

"That the above matter be referred to J. O. Patterson, Jr., Esq., of Barnwell, S. C., as Special Master, to take the testimony and report his recommendations thereon as to what would be a reasonable fee for the defendant's attorneys representing the executors herein for their services in the above-entitled actions.

"We consent to the foregoing order and that it be taken at Chambers in Barnwell, S. C.    Chas. Carrol Simms, H. L. O'Bannon, Attorneys for defendants-executors.   J. E. Tobin, Holman & Boulware, Attorneys for Plaintiffs and certain defendants.   J. Henry Johnson, Atty. for certain defendants.   R. P. Searson, Atty. for C. G. Carter, W. E. Carter, and F. M. Young.

"N. G. EVANS,
"Special Judge Presiding."

The exceptions were as follows:

"(1) Because his Honor, Special Judge Evans, had no jurisdiction to order a reference in the case, or to confirm the Special Referee's report in the cause, while he was engaged in holding Court in another County and another Circuit than the Fourteenth Judicial Circuit in which Allendale County is situated, the action having been properly brought in Allendale County.

"(2) Because his Honor, Special Judge Evans, erred in holding in effect that he had jurisdiction to hear the motion to confirm the Special Master's report by agreement of

counsel, the error being that counsel could not bind their clients by their consent in a matter such as this, where the relation between clients and counsel was antagonistic.

"(3) Because the appellants have been deprived of their day in Court, and have not waived the same.

"(4) Because the fee allowed by the Court is excessive, inequitable, and unjust.

"(5) Because his Honor, Judge Sease, erred in refusing to set aside the order of Judge Evans, dated December 28, 1922, the same having been signed without jurisdiction, and it should have been treated as a nullity wherever it was found."

*Mr. R. P. Searson,* for appellants, cites: *Circuit Judge had no right to hold hearing in another Circuit without consent of all parties:* 76 S. C., 226.

*Messrs. H. L. O'Bannon* and *C. C. Simms,* for respondent, cite: *Case controlled by* 60 S. C., 280; 44 S. C., 166; 72 S. C., 153.

December 1, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The Court is of the opinion that appellants' first, second, and third exceptions are well taken, and should be sustained. Even if it should be conceded that Judge N. G. Evans, holding the Court of Common Pleas for Barnwell County under a special commission, had jurisdiction to make the orders in a cause pending in another County in a different Circuit, such jurisdiction could in no event be acquired without the consent of the real parties in interest to the controversy which was attempted to be adjudicated. That controversy was between the executors of the Young will and their attorneys as to the amount of compensation to be paid by the executors for certain professional services. In such matter, clearly, the executors were not bound by the consent of their attorneys of record in the cause in which the services in question were rendered. As

was said by this Court in *Cauthen v. Cauthen,* 76 S. C., 226; 56 S. E., 978:

"A party to an action is bound by the consent of his attorney in proceedings in Court respecting those matters only which are within the scope of the action. Not only was the order of reference as to fees not within the scope of the action, but it was a step in the adjudication of a matter in which, from the very nature of things, Messrs. Green & Hines could not represent Cauthen. When a legal proceeding is set on foot to have a claim of one person adjudged a debt due by another, the two individuals, in a legal sense, are in antagonistic relations, and neither, as to that particular matter, can be the representative of the other. 'The fact that the inquiry relates to a claim for services rendered in the confidential relation of attorney and client only emphasizes the impossibility of representation in such circumstances."

The contention that because the executors were trustees they were not competent to act for themselves in determining the amount of compensation to be paid attorneys employed by them in the discharge of the duties of their trust is untenable. Where a trust estate is attacked by third parties, it is as much the duty of the Trustees to see that the amount of compensation paid to attorneys is not excessive as it is to employ counsel. So strictly are they held to a careful discharge of that duty that this Court has declared that the better practice is for the trustee to obtain the sanction of the Court to which he is accountable for the administration of his trust before counsel fees are actually paid out of the trust fund. *Turnipseed v. Sirrine,* 60 S. C., 272; 38 S. E., 423. Here the executors are not seeking the sanction of the Court to make a contract for the employment of attorneys or to pay counsel certain fees. This action does not involve the administration by the executors, or by the Court, of the trust fund. The cause at bar, in which it is sought to have the Court adjudicate the

amount which the trustees shall pay counsel for services rendered in the cause, involved merely the question of whether a trust attempted to be created by the will of Dr. Young was, in fact and in law, actually created. The matter of employment of and settlement with counsel by the executors of the will involves no equities inhering in the case or growing out of it, but rests upon "contract rights strictly legal in character, in the determination of which either party is entitled to a jury trial." *Cauthen v. Cauthen, supra,. Ex parte Fort,* 36 S. C., 19; 15 S. E., 332.

Under the foregoing view the remaining exceptions require no consideration.

It is accordingly adjudged that the orders of Special Judge Evans appealed from be, and are hereby, reversed.